**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| BX LED LLC,<br><br>Plaintiff,<br><br>v.<br><br>GOVEE MOMENTS TRADING LTD., and SHENZHEN INTELLIROCKS TECH CO., LTD.,<br><br>Defendants. | ) | Civil Action No.<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff BX LED LLC ("BX" or "Plaintiff"), by and through the undersigned counsel, hereby asserts the following claims for patent infringement against Defendants Govee Moments Trading Ltd. ("Govee") and Shenzhen Intellirocks Tech Co., Ltd. ("Intellirocks") (collectively, "Defendants"), and alleges as follows:

**SUMMARY**

1. Plaintiff is the owner by assignment of all right, title and interest in United States United States Patent Nos. 6,869,812; 9,913,333; 8,203,260; and 10,966,300 (collectively, the "Patents-in-Suit").

2. Defendants infringe the Patents-in-Suit at least by selling, without authorization, Plaintiff's proprietary technologies in a number of their commercial products including, *inter alia*, the Govee A19 Bulb, Govee BR30 Smart Bulb, Govee Smart Corner Floor Lamp, Govee Flow Plus Light Bar, Govee Smart Ceiling Light, Govee H7010 String Lights, and other substantially similar products (collectively, the "Accused Products"). These Accused Products

are marketed, offered, and distributed throughout the United States, including in this District.

3. By this action, Plaintiff seeks to obtain compensation for the harm Plaintiff has suffered, and will continue to suffer, as a result of Defendants' infringement of the Patents-in-Suit.

**NATURE OF THE ACTION**

4. This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq*.

5. Defendants have infringed and continue to infringe, and at least as early as the filing and/or service of this Complaint, have induced and continue to induce infringement of, and have contributed to and continue to contribute to infringement of, one or more claims of Plaintiff's Patents-in-Suit at least by making, using, selling, and/or offering to sell the Accused Products in the United States, including in this District, and/or by importing the Accused Products into the United States.

6. Plaintiff is the legal owner by assignment of the Patents-in-Suit, which were duly and legally issued by the United States Patent and Trademark Office ("USPTO"). Plaintiff seeks monetary damages for Defendants' infringement of the Patents-in-Suit.

**THE PARTIES**

7. Plaintiff BX LED LLC is a Texas limited liability company with its principal place of business at 17330 Preston Road, Suite 200D, Dallas, Texas 75252. Plaintiff is the owner of the intellectual property rights at issue in this action.

8. On information and belief, Defendant Govee Moments Trading Ltd. is a Hong Kong corporation with its principal place of business at Flat/Room 030, Block B, 2/F, Anda Industrial Building, 2-6 Wah Sing Street, Kwai Chung, NT, Hong Kong and may be served with

process by serving it directly at its headquarters in Hong Kong or via substituted service.

9. On information and belief, Defendants Shenzhen Intellirocks Tech Co., Ltd. is a Chinese corporation with its principal place of business at No. 2901-2904, 3002, Block C, Section 1, Chuangzhi Yuncheng Building, Liuxian Avenue, Xili Community, Xili Street, Nanshan District, Shenzhen, Guangdong, China and may be served with process by serving it directly at its headquarters in China or via substituted services

10. On information and belief, Defendants, through their online store, directly and/or indirectly distribute, market, offer to sell, and/or sell the Accused Products in the United States and/or import the Accused Products into the United States, including in the Eastern District of Texas, and otherwise direct infringing activities to this District in connection with the Accused Products.

## JURISDICTION AND VENUE

11. As this is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 et seq., this Court has subject matter jurisdiction over the matters asserted herein under 28 U.S.C. §§ 1331 and 1338(a).

12. This Court has personal jurisdiction over Defendants because Defendants have (i) availed themselves of the rights and benefits of the laws of the State of Texas, (ii) transacted, conducted, and/or solicited business and engaged in a persistent course of conduct in the State of Texas (and in this District), (iii) derived substantial revenue from the sales and/or use of products, such as the Accused Products, in the State of Texas (and in this District), (iv) purposefully directed activities (directly and/or through intermediaries), such as marketing, shipping, distributing, offering for sale, selling, and/or advertising the Accused Products, at residents of the State of Texas (and residents in this District), (v) delivered Accused Products

into the stream of commerce with the expectation that the Accused Products will be used and/or purchased by consumers in the State of Texas (and in this District), and (vi) committed acts of patent infringement in the State of Texas (and in this District).

13. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c), as Defendants are not residents of the United States and the sales, offers to sell, and importation of the Accused products giving rise to the claim of patent infringement have occurred in this District.

## PATENTS-IN-SUIT

### U.S. Patent No. 6,869,812

14. U.S. Patent No. 6,869,812 (the "'812 Patent") is titled "High power AllnGaN based multichip light emitting diode" and was issued on March 22, 2005. A true and correct copy of the '812 Patent is attached as Exhibit A.

15. The '812 Patent was filed on May 13, 2003 as U.S. Patent Application No. 10/438,108.

16. Plaintiff is the owner of all rights, title, and interest in and to the '812 Patent, with the full and exclusive right to bring suit to enforce the '812 Patent, including the right to recover for past infringement.

17. The '812 Patent is valid and enforceable under United States Patent Laws.

18. The '812 Patent recognized problems with existing light emitting diodes at the time of the invention of the '812 Patent.

19. For instance, the inventors of the '812 Patent recognized that prior art light emitting diodes had issues of insufficient illumination and poor efficiency, limiting their ability "to function in some applications, such as providing general illumination, *e.g.*, ambient

lighting." '812 Patent at 1:24-31. Prior attempts to address these issues involved the use of multiple LEDs and/or larger device sizes. *See id*. at 1:38-45, 2:16-18.

20. The use of larger device sizes introduced other impediments towards efficiency, *e.g.*, lower light extraction efficiency relative to smaller devices. *See id*. at 2:61-65. Light extraction efficiency refers to the issue that when light is generated in an LED, some light fails to escape the device, because "as the device size increases, light has a tendency to bounce more and thus travel a longer distance before exiting the device, resulting in increased light loss," whereas "light tends to bounce fewer times in a smaller device and thus travels a shorter distance." *See id*. at 3:12-16.

21. The inventors of the '812 Patent recognized that it was "desirable to minimize the number of bounces and the total travel distance before light can escape for any light transmissive layer of an LED." *See id*. at 3:9-11.

22. In view of the foregoing, among other advantages over the prior art, the inventions claimed by the '812 Patent provide the benefits of "superior light output efficiency" over the prior art by way of an active surface with elongated geometry. *See id*. at 11:46-48. With elongated geometry, "light can easily escape from the long dimension side, thus substantially enhancing the brightness of the device. The elongated configuration of the LED chip also enhances heat dissipation, thus allowing the device to be operated at higher current levels to facility further enhancement of the light output thereof, as well as for improvement of the efficiency thereof." *See id*. at 8:62-9:3.

**U.S. Patent No. 8,203,260**

23. U.S. Patent No. 8,203,260 (the "'260 Patent") is titled "Color temperature tunable white light source" and was issued on March 14, 2006. A true and correct copy of the

‘260 Patent is attached as Exhibit B. The ‘260 Patent was filed on April 13, 2007 as U.S. Patent Application No. 11/787,107.

24. Plaintiff is the owner of all rights, title, and interest in and to the ‘260 Patent, with the full and exclusive right to bring suit to enforce the ‘260 Patent, including the right to recover for past infringement.

25. The ‘260 Patent is valid and enforceable under United States Patent Laws. The ‘260 Patent recognized problems with existing light emitting devices at the time of the invention of the ‘260 Patent.

26. For instance, the ‘260 Patent describes apparatuses, absent in the prior art, which provide a tunable white light source. *See*, *e.g.*, ‘260 Patent at 2:15-17. The ‘260 Patent recognized that traditional white light sources emitted white light at a relatively fixed color temperature, such as “warm white light” having a color temperature of approximately 3000 Kelvin (K), in the case of incandescent lighting, and “cold white light” having a color temperature of approximately 7000K, in the case of fluorescent lighting. *See id*. at 1:20-24. At the time of the ‘260 Patent, white LED lighting was a relatively recent innovation and had similar limitations to traditional white light sources. *Id*. at 1:13:29.

27. The ‘260 Patent recognizes that the prior art comprised systems and methods wherein LED white light was generated within a predetermined portion of the visible spectrum, for example, 400nm-700nm wavelength range, and using a significant number (e.g., “three hundred LEDs each of which has a narrow spectral width,” in one example) of LEDs to achieve any tunability within that spectrum. *See id*. at 1:55-65. Considering the narrow visibility spectrum of white light produced by these sources, the unwieldy number of LEDs required to provide tunability, and/or the need for cumbersome filters to obtain tunability, there was a need

in the prior art for methods and devices that provided sources of white light that were tunable across the color temperature and visible spectrum with a minimal number of LED arrays. In addition, there was particular need to further increase the operating life and lower the power consumption of lighting devices, including LED lighting. *See*, *e.g.*, *id*. at 1:46-49; 2:61-64.

28. The inventions claimed by ‘260 Patent address these limitations by describing an apparatus with two LED arrangements wherein the first LED arrangement emits light of a first wavelength range, and the second emits light of a second wavelength range such the combination of the two appears white. *See*, *e.g.*, *id*. at 2:21-28. The first and second LED arrangements also contained respective means for controlling their relative outputs. *See*, *e.g.*, *id*. For example, in one described embodiment, the color temperature of the two LEDs could be tuned by controlling the relative magnitude of the drive currents of the LEDs using, for example, a potential divider arrangement. *See id*. at 2:50-52.

29. The inventors of the ‘260 Patent recognized a number of advantages of the claimed inventions over the prior art, including wide application in a variety of commercial and domestic lighting applications, without the necessity to manufacture different lights of various static, or highly limited, color temperatures and visibility spectrum output for different applications. *See*, *e.g.*, *id*. at 8:51-53. The invention is also particularly advantageous in applications where visibility may be impaired with changing environmental conditions such as fog, dust, or smoke, such that the LED lighting can be tuned to the level of optimal visibility. *See*, *e.g.*, *id*. at 3:49-53; 8:53-56. The invention further has the advantage of minimizing the number of LED arrangements necessary to achieve tunability across a broad color temperature spectrum, thus improving efficiency in power consumption and reducing manufacturing cost. *See*, *e.g.*, *id*. at 2:61-65.

**U.S. Patent No. 10,966,300**

30. U.S. Patent No. 10,966,300 (the "'300 Patent") is titled "Light sources utilizing segmented LEDs to compensate for manufacturing variations in the light output of individual segmented LEDs" and was issued on March 30, 2021. A true and correct copy of the '300 Patent is attached as Exhibit C.

31. The '300 Patent was filed on June 21, 2019 as U.S. Patent Application Serial No. 16/449,220 and has a priority date of February 26, 2009.

32. Plaintiff is the owner of all rights, title, and interest in and to the '300 Patent, with the full and exclusive right to bring suit to enforce the '300 Patent, including the right to recover for past infringement.

33. The '300 Patent is valid and enforceable under United States Patent Laws.

34. The '300 Patent recognized and provided solutions to problems arising with LEDs' replacement of conventional light emitting devices such as incandescent and fluorescent lights. '300 Patent at 1:26-32.

35. For instance, the '300 Patent recognized that the dissipation of heat due to the conversion efficiency of the LEDs places a limit on the power level at which an LED operates. The '300 Patent also recognized that, due to the increased current running through the LED, higher light output of the LEDs would lead to a decrease in conversion efficiency as well as an overall decrease in the lifetime of the LED. *Id.* at 1:41-61. A light source with a typical single LED does not produce sufficient light for most applications and, in general, "there is a limit to the light per unit area of LED that can be practically generated at an acceptable power conversion efficiency." *Id.* at 1:62-2:8. In this respect, LED light sources have been designed to use multiple LEDs wired in parallel to avoid numerous cost disadvantages and increased failure rates

associated with connecting the LEDs in a series-type connection or by making larger LEDs. *Id.* at 2:9-3:31.

36. The inventors of the '300 Patent addressed these limitations by utilizing "a single LED die that is divided into N segments that are serially connected to one another." *Id.* at 4:29-42. In this respect, the '300 Patent comprises, in one embodiment, a plurality of segmented LEDs connected in parallel between two power rails where the segmented LEDs are serially connected in segments having equal area thus providing an improved, less expensive, and longer-lasting light emitting device. *Id.* at 4:29-45; 10:64-11:5; abstract.

37. In view of the foregoing limitations of the prior art, the inventions claimed in the '300 Patent provide improved overall efficiency and life of the light source and "the ability to provide a light source that operates from a significantly higher potential than conventional LEDs while breaking up the light source into sufficient component light sources to compensate for the variability in light generation between the various component light sources." *See, e.g., id.* at 7:37-43.

**U.S. Patent No. 9,913,333**

38. U.S. Patent No. 9,913,333 (the "'333 Patent") is titled "Light sources utilizing segmented LEDs to compensate for manufacturing variations in the light output of individual segmented LEDs" and was issued on March 6, 2018. A true and correct copy of the '333 Patent is attached as Exhibit D.

39. The '333 Patent was filed on March 20, 2017 as U.S. Patent Application Serial No. 15/464,200 and has a priority date of February 26, 2009.

40. Plaintiff is the owner of all rights, title, and interest in and to the '333 Patent, with the full and exclusive right to bring suit to enforce the '333 Patent, including the right to

recover for past infringement.

41. The ‘333 Patent is valid and enforceable under United States Patent Laws.

42. The ‘333 Patent recognized and provided solutions to problems arising with LEDs’ replacement of conventional light emitting devices such s incandescent and fluorescent lights. ‘333 Patent at 1:30-36.

43. For instance, the ‘333 Patent recognized that the dissipation of heat due to the conversion efficiency of the LEDs places a limit on the power level at which an LED operates. The ‘333 Patent also recognized that, due to the increased current running through the LED, higher light output of the LEDs would lead to a decrease in conversion efficiency as well as an overall decrease in the lifetime of the LED. *Id.* at 1:45-65. A light source with a typical single LED does not produce sufficient light for most applications and, in general, “there is a limit to the light per unit area of LED that can be practically generated at an acceptable power conversion efficiency.” *Id.* at 1:65-3:40. In this respect, LED light sources have been designed to use multiple LEDs wired in parallel to avoid numerous cost disadvantages and increased failure rates associated with connection the LEDs in a series-type connection or by making larger LEDs. *Id.* at 1:66-3:12.

44. The inventors of the ‘333 Patent addressed these limitations by utilizing “a single LED die that is divided into N segments that are serially connected to one another.” *Id.* at 4:29-42. In this respect, the ‘333 Patent comprises, in one embodiment, “a plurality of segmented LEDs connected in parallel to a power bus” where the segmented LEDs are serially connected in segments having equal area thus providing an improved, less expensive, and longer-lasting light emitting device. *Id.* at 4:29-455; 10:64-11:5; abstract.

45. In view of the foregoing limitations of the prior art, the inventions claimed in the

‘333 Patent provide improved overall efficiency and life of the light source and “the ability to provide a light source that operated from a significantly higher potential that conventional LEDs while breaking up the light source into sufficient component light sources to compensate for the variability in light generation between the various component light sources.” *See, e.g., id.* at 5:60:6:11; 6:59-7:5; 7:43-49.

**COUNT I: INFRINGEMENT OF U.S. PATENT NO. 6,869,812**

46. Plaintiff incorporates by reference and re-alleges paragraphs 1-44 of the Complaint as if fully set forth herein.

47. Defendants have infringed and are infringing, either literally or under the doctrine of equivalents, the ‘812 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license products, including but not limited to the Govee A19 Bulb, Govee BR30 Smart Bulb, Govee Smart Corner Floor Lamp, Govee Flow Plus Light Bar, Govee Smart Ceiling Light, and other substantially similar products (collectively, the “‘812 Accused Products”).

48. By way of non-limiting example(s), set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the ‘812 Patent by the ‘812 Accused Products. This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the ‘812 Accused Products that it obtains during discovery.

49. ***1(a): A light emitting diode chip comprising***:— The Govee Smart Corner Floor Lamp, Govee Flow Plus Light Bar, and Govee Smart Ceiling Light each comprise a “light emitting diode chip,” as recited in claim 1:

*Govee Smart Corner Floor Lamp*









Product Page LED Package LED Chip

*Govee Flow Plus Light Bar*








Product Page LED Package LED Chip

*Govee Smart Ceiling Light*








Product Page LED Package LED Chip

50. ***1(b): a substantially transparent substrate;***— The Govee Smart Corner Floor Lamp, Govee Flow Plus Light Bar, and Govee Smart Ceiling Light each comprise a "substantially transparent substrate," as seen in the below images where the transparent substrate

is annotated in red:




*Govee Smart Corner Floor Lamp*




*Govee Flow Plus Light Bar*




*Govee Smart Ceiling Light*

51. ***1(c): An active region formed upon the substrate; and;***— The Govee Smart Corner Floor Lamp, Govee Flow Plus Light Bar, and Govee Smart Ceiling Light each comprise

an “active region formed upon the substrate,” as seen in the below images:




*Govee Smart Corner Floor Lamp*




*Govee Flow Plus Light Bar*




*Govee Smart Ceiling Light*

52. ***1(d): Wherein an aspect ratio of the active area is greater than approximately 1.5 to 1.***— The Govee Smart Corner Floor Lamp, Govee Flow Plus Light Bar, and Govee Smart Ceiling Light each comprise an active region wherein the aspect ratio is greater than approximately 1.5 to 1.

*Gover Smart Corner Floor Lamp*




*Govee Flow Plus Light Bar*



*Govee Smart Ceiling Light*




The aspect ratios of the active region of the light emitting diode chip in the Govee Smart Corner Floor Lamp, Govee Flow Plus Light Bar, and Govee Smart Ceiling Light are all greater than 1.5 to 1. Specifically, the aspect ratios, as derived from the pixel (px) measurements taken from above images, are:

| | L1 (long side) | L2 | Aspect Ratio (L1/L2) |
|---|---|---|---|
| Govee Smart Corner Floor Lamp | 3561.18 | 2226.40 | 1.599 |
| Govee Flow Plus Light Bar | 2882.16 | 797.04 | 3.616 |
| Govee Smart Ceiling Light | 2355.90 | 916.37 | 2.570 |

53. Additionally, Defendants have been and/or currently are active inducers of infringement of the ‘812 Patent under 35 U.S.C. § 271(b) and contributory infringers of the ‘812 Patent under 35 U.S.C. § 271(c).

54. Indeed, Defendants have been and/or currently are intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the ‘812 Patent while being on notice of (or willfully blind to) the ‘812 Patent. For instance, Defendants have supplied and continue to supply the ‘812 Accused Products to customers (e.g., end users and/or distributors of the ‘812 Accused Products) while knowing that use of these products in their

intended manner will directly infringe one or more claims of the ‘812 Patent.

55. Defendants have been and/or currently are knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the ‘812 Patent. As one example, Defendants promote, advertise and instruct customers or potential customers about the ‘812 Accused Products and uses of the ‘812 Accused Products. *See*, *e.g.*, https://us.govee.com/products/govee-rgbicw-smart-corner-floor-lamp; https://us.govee.com/products/govee-rgbicww-wifi-bluetooth-flow-plus-light-bars; https://us.govee.com/products/govee-rgbww-rgbic-smart-ceiling-light.

56. Defendants know (and/or have known) that such encouraging and aiding does (and/or would) result in their customers directly infringing the ‘812 Patent. For instance, Defendants know (and/or have known) of the existence of the ‘812 Patent or at least should have known of the existence of the ‘812 Patent but was willfully blind to its existence. Indeed, Defendants have had actual knowledge of the ‘812 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of its knowledge of the ‘812 Patent (and/or as a direct and probable consequence of its willful blindness to this fact), Defendants specifically intend (and/or have intended) that its encouraging and aiding does (and/or would) result in direct infringement of the ‘812 Patent by Defendants’ customers. On information and belief, Defendants specifically intend (and/or has intended) that their actions will (and/or would) result in direct infringement of one or more claims of the ‘812 Patent and/or subjectively believe (and/or have believed) that their actions will (and/or would) result in infringement of the ‘812 Patent but have taken (and/or took) deliberate actions to avoid learning of those facts.

57. Additionally, Defendants has been and/or currently is contributorily infringing one or more claims of the ‘812 Patent by offering for sale, selling, and/or importing one or more

components in connection with the ‘812 Accused Products that contribute to the direct infringement of the ‘812 Patent by customers of the ‘812 Accused Products. As set forth above, Defendants have had actual knowledge of the ‘812 Patent or are willfully blind to its existence since at least as early as the filing and/or service of this Complaint. Further, Defendants offer for sale, sells, and/or import one or more components in connection with the ‘812 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendants know (or should know) that such component(s) are especially made or especially adapted for use in infringement of the ‘812 Patent. Defendants have supplied (and/or continues to supply) the ‘812 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the ‘812 Patent by using the ‘812 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendants).

58. At least as early as the filing and/or service of this Complaint, Defendants' infringement of the ‘812 Patent was and continues to be willful and deliberate, thereby entitling Plaintiff to enhanced damages.

59. Additional allegations regarding Defendants' knowledge of the ‘812 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

60. Defendants' infringement of the ‘812 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

61. Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the ‘812 Patent.

62. Plaintiff is entitled to recover from Defendants all damages that Plaintiff has sustained as a result of Defendants' infringement of the ‘812 Patent, including, without

limitation, a reasonable royalty.

**<u>COUNT II: INFRINGEMENT OF U.S. PATENT NO. 8,203,260</u>**

63. Plaintiff incorporates by reference and re-alleges 1-61 of the Complaint as if fully set forth herein.

64. Defendants have infringed and is infringing, either literally or under the doctrine of equivalents, the ‘260 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license, products, including but not limited to the Govee Smart A19 Bulb and Govee BR30 Smart Bulb, among other substantially similar products (collectively, the “‘260 Accused Products”).

65. As non-limiting examples, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the ‘260 Patent. This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the ‘260 Accused Products that it obtains during discovery.

66. ***1(a): A color temperature tunable white light source, the source comprising:***— The ‘260 Accused Products are color temperature tunable white light sources, as seen below:






67. ***1(b): an array of first LED arrangements operable to emit white light with a***

***color correlated temperature (CCT) in a range of 2500 K to 4000 K and;***—The white light sources of the '260 Accused Products comprise an array of first LED arrangements operable to emit white light with a color correlated temperature (CCT) in a range of 2500 K to 4000 K.







*Govee A19 Smart Bulb*




*Govee BR30 Smart Bulb*

68. ***1(c): second LED arrangements operable to emit white light with a color correlated temperature (CCT) in a range of 6000 K to 10,000 K*** – The white light sources of the '260 Accused Products comprise second LED arrangements operable to emit white light with a color correlated temperature (CCT) in a range of 6000 K to 10,000 K.




*Govee A19 Smart Bulb*




*Govee BR30 Smart Bulb*

69. ***1(d): wherein the LED arrangements are configured such that a composite***

***light is emitted by the array;***— The LED arrangements of the ‘260 Accused Products are configured to emit a composite light. For example, as seen in the images for limitation 1(a), the LED arrangements are tunable and placed next to each other so that the Warm White LED arrangement and the Cool White LED arrangement emit a composite light (e.g. a uniform white color temperature).

70. ***1(e): wherein the relative drive currents of the first and second LED arrangements are controllable, and thus variable in relative magnitude, such that the color correlated temperature of the composite light emitted by the array is electrically tunable***—As seen from the above juxtapositions of the LED arrangements and mobile application screenshots in limitations 1(b) and 1(c), the color correlated temperature of the composite light emitted by the array is electrically tunable and such tuning is accomplished by way of controlling the relative drive currents and thus relative magnitudes of the first and second LED arrangements.

71. Additionally, Defendants have been and/or currently are an active inducer of infringement of the ‘260 Patent under 35 U.S.C. § 271(b) and contributory infringers of the ‘260 Patent under 35 U.S.C. § 271(c).

72. Indeed, Defendants have been and/or currently are intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the ‘260 Patent while being on notice of (or willfully blind to) the ‘260 Patent. For instance, Defendants have supplied and continue to supply the ‘260 Accused Products to customers (e.g., end users and/or distributors of the ‘260 Accused Products) while knowing that use of these products in their intended manner will directly infringe one or more claims of the ‘260 Patent.

73. Defendants have been and/or currently are knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the ‘260 Patent. As

one example, Defendants promote, advertise, and instruct customers or potential customers about the '260 Accused Products and uses of the '260 Accused Products. *See, e.g.*, https://us.govee.com/products/govee-smart-a19-led-light-bulbs; https://us.govee.com/products/govee-rgbww-smart-led-light-bulbs.

74. Defendants know (and/or have known) that such encouraging and aiding does (and/or would) result in their customers directly infringing the '260 Patent. For instance, Defendants know (and/or have known) of the existence of the '260 Patent or at least should have known of the existence of the '260 Patent but was willfully blind to its existence. Indeed, Defendants have had actual knowledge of the '260 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of its knowledge of the '260 Patent (and/or as a direct and probable consequence of its willful blindness to this fact), Defendants specifically intend (and/or have intended) that its encouraging and aiding does (and/or would) result in direct infringement of the '260 Patent by Defendants' customers. On information and belief, Defendants specifically intend (and/or have intended) that its actions will (and/or would) result in direct infringement of one or more claims of the '260 Patent and/or subjectively believe (and/or have believed) that their actions will (and/or would) result in infringement of the '260 Patent but have taken (and/or took) deliberate actions to avoid learning of those facts.

75. Additionally, Defendants have been and/or currently are contributorily infringing one or more claims of the '260 Patent by offering for sale, selling, and/or importing one or more components in connection with the '260 Accused Products that contribute to the direct infringement of the '260 Patent by customers of the '260 Accused Products. In particular, as set forth above, Defendants have had actual knowledge of the '260 Patent or are willfully blind to its existence since at least as early as the filing and/or service of the Complaint. Further,

Defendants offer for sale, sell, and/or import one or more components in connection with the ‘260 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendants know (or should know) that such component(s) are especially made or especially adapted for use in infringement of the ‘260 Patent. Defendants have supplied (and/or continue to supply) the ‘260 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the ‘260 Patent by using the ‘260 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendants).

76. On information and belief, at least as early as the filing and/or service of the Complaint, Defendants' infringement of the ‘260 Patent was and continues to be willful and deliberate, thereby entitling Plaintiff to enhanced damages.

77. Additional allegations regarding Defendants' knowledge of the ‘260 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

78. Defendants' infringement of the ‘260 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

79. Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the ‘260 Patent.

80. Plaintiff is entitled to recover from Defendants all damages that Plaintiff has sustained as a result of Defendants' infringement of the ‘260 Patent, including, without limitation, a reasonable royalty.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 9,913,333

81. Plaintiff incorporates by reference and re-alleges paragraphs 1-79 of the

Complaint as if fully set forth herein.

82. Defendants have infringed and are infringing, either literally or under the doctrine of equivalents, the '333 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license, products, including but not limited to the Govee H7010 String Light among other substantially similar products (collectively, the "'333 Accused Products").

83. As just one non-limiting example, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '333 Patent. This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '333 Accused Products that it obtains during discovery.

84. ***1(a): A light source comprising comprising:***—The Govee H7010 String Light comprises a light source:




*Govee H7010 String Light*

85. ***1(b): a plurality of segmented light emitting diodes (LEDs) connected in***

***parallel:***—The Govee H7010 String Light comprises a plurality of segmented LEDs connected in parallel, as seen in the annotated images below:







*Govee H7010 String Light*

86. ***1(c): wherein each segmented LED is an LED die divided into N segments that are each equal in area and form individual LEDs serially connected to one another, and wherein N is an integer that is greater than 1; and;***—This limitation is met by the segmented LEDs as seen in the annotated images below:




*Govee H7010 String Light*

87. ***1(d): a controller that receives AC power and provides a power signal on said power bus.***— The Govee H7010 String Light comprises a controller that receives AC power and provides a power signal on said power bus. For example, the controller (illustrated in below image) receives AC power and sends a control signal based on said AC power.




*Govee H7010 String Light*

88. Additionally, Defendants have been and/or currently are an active inducer of infringement of the '333 Patent under 35 U.S.C. § 271(b) and contributory infringers of the '333 Patent under 35 U.S.C. § 271(c).

89. Indeed, Defendants have been and/or currently are intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '333 Patent while being on notice of (or willfully blind to) the '333 Patent. For instance, Defendants have supplied and continues to supply the '333 Accused Products to customers (e.g., end users and/or distributors of the '333 Accused Products) while knowing that use of these products in their intended manner will directly infringe one or more claims of the '333 Patent.

90. Defendants have been and/or currently is knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '333 Patent. As one example, Defendants promote, advertise, and instruct customers or potential customers about the '333 Accused Products and uses of the '333 Accused Products. *See, e.g.*, https://www.amazon.com/Govee-Bluetooth-Waterproof-Shatterproof-Decorative/dp/B08ZCDR8NK/.

91. Defendants know (and/or have known) that such encouraging and aiding does (and/or would) result in its customers directly infringing the '333 Patent. For instance, Defendants know (and/or have known) of the existence of the '333 Patent or at least should have known of the existence of the '333 Patent but were willfully blind to its existence. Indeed, Defendants have had actual knowledge of the '333 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of their knowledge of the '333 Patent (and/or as a direct and probable consequence of their willful blindness to this fact), Defendants specifically

intend (and/or have intended) that their encouraging and aiding does (and/or would) result in direct infringement of the '333 Patent by Defendants' customers. On information and belief, Defendants specifically intend (and/or have intended) that their actions will (and/or would) result in direct infringement of one or more claims of the '333 Patent and/or subjectively believe (and/or have believed) that their actions will (and/or would) result in infringement of the '333 Patent but have taken (and/or took) deliberate actions to avoid learning of those facts.

92. Additionally, Defendants have been and/or currently are contributorily infringing one or more claims of the '333 Patent by offering for sale, selling, and/or importing one or more components in connection with the '333 Accused Products that contribute to the direct infringement of the '333 Patent by customers of the '333 Accused Products. In particular, as set forth above, Defendants have had actual knowledge of the '333 Patent or are willfully blind to its existence since at least as early as the filing and/or service of the Complaint. Further, Defendants offer for sale, sell, and/or import one or more components in connection with the '333 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendants know (or should know) that such component(s) are especially made or especially adapted for use in infringement of the '333 Patent. Defendants have supplied (and/or continue to supply) the '333 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the '333 Patent by using the '333 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendants).

93. At least as early as the filing and/or service of the Complaint, Defendants' infringement of the '333 Patent was and continues to be willful and deliberate, thereby entitling Plaintiff to enhanced damages.

94. Additional allegations regarding Defendants' knowledge of the '333 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

95. Defendants' infringement of the '333 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

96. Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '333 Patent.

97. Plaintiff is entitled to recover from Defendants all damages that Plaintiff has sustained as a result of Defendants' infringement of the '333 Patent, including, without limitation, a reasonable royalty.

**COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 10,966,300**

98. Plaintiff incorporates by reference and re-alleges paragraphs 1-96 of the Complaint as if fully set forth herein.

99. Defendants have infringed and are infringing, either literally or under the doctrine of equivalents, the '300 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license, products, including but not limited to the Govee A19 Smart Bulb and Govee H7010 String Light, among other substantially similar products (collectively, the "'300 Accused Products").

100. As just one non-limiting example, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '300 Patent. This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '300 Accused Products that it

obtains during discovery.

101. ***1(a): A light source comprising:***—The Govee H7010 String Light comprises a light source.




*Govee H7010 String Light*

102. ***1(b): a substrate having first and second power rails; and***—The Govee H7010 String Light comprises a substrate having first and second power rails, as seen in the annotated images below:




*Govee H7010 String Light*

103. ***1(c): a plurality of segmented LEDs connected between the first and second power rails***—The Govee H7010 String Light comprises a plurality of segmented LEDs

connected between the first and second power rails as seen in the annotated images below:




*Govee H7010 String Light*

104. ***1(d): wherein each segmented LED is configured to generate light when a power signal is applied to the first and second power rails***—In the Govee H7010 String Light, each segmented LED is configured to generate light when a power signal is applied to the first and second power rails.

105. ***1(e): wherein the plurality of segmented LEDs are provided by a single LED die that is divided into N segments serially connected to each other, with N being ≥1, and***—The plurality of segmented LEDs are provided by a single LED die that is divided into 3 segments serially connected to each other.










*Govee H7010 String Light*

106. ***1(f): wherein each segmented LED comprises a size that is 1/N times a size of a single junction LED fabricated in a same material as the segmented LED.***—Each segmented LED is 1/6 the size of a single junction LED fabricated in the same material as the segmented LED.




*Govee H7010 String Light*

107. Additionally, Defendants have been and/or currently are an active inducer of infringement of the '300 Patent under 35 U.S.C. § 271(b) and contributory infringers of the '300 Patent under 35 U.S.C. § 271(c). Indeed, Defendants have been and/or currently are intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '300 Patent while being on notice of (or willfully blind to) the '300 Patent. For instance, Defendants have supplied and continue to supply the '300 Accused Products to customers (e.g., end users and/or distributors of the '300 Accused Products) while knowing that use of these products in their intended manner will directly infringe one or more claims of the '300 Patent.

108. Defendants have been and/or currently are knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the ‘300 Patent. As one example, Defendants promote, advertise, and instruct customers or potential customers about the ‘300 Accused Products and uses of the ‘300 Accused Products. *See*, *e.g.*, https://www.amazon.com/Govee-Bluetooth-Waterproof-Shatterproof-Decorative/dp/B08ZCDR8NK/.

109. Defendants know (and/or have known) that such encouraging and aiding does (and/or would) result in their customers directly infringing the ‘300 Patent. For instance, Defendants know (and/or have known) of the existence of the ‘300 Patent or at least should have known of the existence of the ‘300 Patent but were willfully blind to its existence. Indeed, Defendants have had actual knowledge of the ‘300 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of their knowledge of the ‘300 Patent (and/or as a direct and probable consequence of their willful blindness to this fact), Defendants specifically intend (and/or have intended) that their encouraging and aiding does (and/or would) result in direct infringement of the ‘300 Patent by Defendants’ customers. On information and belief, Defendants specifically intend (and/or have intended) that their actions will (and/or would) result in direct infringement of one or more claims of the ‘300 Patent and/or subjectively believe (and/or have believed) that their actions will (and/or would) result in infringement of the ‘300 Patent but have taken (and/or took) deliberate actions to avoid learning of those facts.

110. Additionally, Defendants have been and/or currently are contributorily infringing one or more claims of the ‘300 Patent by offering for sale, selling, and/or importing one or more components in connection with the ‘300 Accused Products that contribute to the direct infringement of the ‘300 Patent by customers of the ‘300 Accused Products. In particular, as set

forth above, Defendants have had actual knowledge of the '300 Patent or are willfully blind to its existence since at least as early as the filing and/or service of the Complaint. Further, Defendants offer for sale, sell, and/or import one or more components in connection with the '300 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendants know (or should know) that such component(s) are especially made or especially adapted for use in infringement of the '300 Patent. Defendants have supplied (and/or continue to supply) the '300 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the '300 Patent by using the '300 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendants).

111. On information and belief, at least as early as the filing and/or service of the Complaint, Defendants' infringement of the '300 Patent was and continues to be willful and deliberate, thereby entitling Plaintiff to enhanced damages.

112. Additional allegations regarding Defendants' knowledge of the '300 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

113. Defendants' infringement of the '300 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

114. Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '300 Patent.

115. Plaintiff is entitled to recover from Defendants all damages that Plaintiff has sustained as a result of Defendants' infringement of the '300 Patent, including, without limitation, a reasonable royalty.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests:

A. That Judgment be entered that Defendants have infringed at least one or more claims of the Patents-in-Suit, directly and/or indirectly, literally and/or under the doctrine of equivalents;

B. An award of damages sufficient to compensate Plaintiff for Defendants' infringement under 35 U.S.C. § 284, including an enhancement of damages on account of Defendants' willful infringement;

C. That the case be found exceptional under 35 U.S.C. § 285 and that Plaintiff be awarded its reasonable attorneys' fees;

D. Costs and expenses in this action;

E. An award of prejudgment and post-judgment interest; and

F. Such other and further relief as the Court may deem just and proper.

Date: October 7, 2024

Respectfully submitted,

**PLATT RICHMOND PLLC**

*/s/ Matthew C. Acosta*
Matthew C. Acosta
Texas Bar No. 24062577
macosta@pcrfirm.com
1201 N. Riverfront Blvd., Suite 100
Dallas, Texas 75207
214.559.2700 Main
214.559.4390 Fax

**COUNSEL FOR PLAINTIFF**
**BX LED LLC**